IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KNOELLE GLOVER,

                **Plaintiff,**

v.                              1:05-cv-3244-WSD

MANNY'S TEXAS STYLE BAR-BE-QUE, INC., et al.,

                **Defendants.**

## ORDER

This matter is before the Court pursuant to the Court's order dated May 2, 2006 which provided that default be entered against the Defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure and which set a hearing on Plaintiff's request for entry of default judgment [8]. The hearing was conducted on June 6, 2006. At the hearing, Plaintiff presented evidence in support of the claims she alleged in the complaint and the damages she seeks to have included in the default judgment she requests be entered. Defendants did not appear at the hearing. (Transcript of Hearing, June 6, 2006 ("Tr.") [9] at 1.)

I.      **BACKGROUND**

This is an action for alleged sexual discrimination against a part-time employee at a barbecue restaurant in Union City, Georgia.  Plaintiff alleges eight (8) claims under federal and state law.  Two claims are asserted under federal law: Sexual Harassment (Count VIII) and Retaliation (Count VI) are asserted under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006) ("Title VII").  (Complaint ("Compl.") [1].)  Six claims are asserted under state law: Wrongful Retention (Count I); Failure to Maintain a Workplace Free from Unwanted Physical and Sexual Misconduct and Harassment (Count II); Assault and Battery (Count III); Intentional Infliction of Emotional Distress (Count IV); Negligent Training (Count V); and Sexual Battery (Count VII).[1]  (Id.)

II.     **DISCUSSION**

Upon entry of default, the well-pleaded allegations of the complaint are to be accepted as true, except those relating to the amount of damages.  Patray v. Northwest Publ'g, Inc., 931 F. Supp. 865, 869 (S.D. Ga. 1996); see Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  The

---

[1]  Plaintiff asserted as separate counts claims for punitive damages (Count IX) and for expenses of litigation and attorney's fees (Count X).  (Id.)

effect of a default judgment is that the defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987) (quoting Nishimatsu, 515 F.2d at 1206).  A defendant's default does not in itself warrant entry of a default judgment.  Nishimatsu, 515 F.2d at 1206.  "There must be a sufficient basis in the pleadings for the judgment entered."  Id.; see also Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).  A default judgment cannot stand on a complaint that fails to state a claim.  Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1371 n.41 (11th Cir. 1997).  In considering a motion for default judgment, the Court must investigate the legal sufficiency of the allegations of the plaintiff's complaint.  McCoy v. Johnson, 176 F.R.D. 676, 679 (N.D. Ga. 1997); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).  While the factual allegations of the complaint are deemed admitted, there must be a sufficient legal basis in the pleadings for entry of default judgment.  Id.

     After the Court determines that default is appropriate, the Court must ascertain an appropriate award of damages.  Chudasama, 123 F.3d at 1364 n.27.  The Court independently "determine[s] the amount and character of the recovery

that should be awarded," because neither the plaintiff nor the defendant has a constitutional right to a jury trial on the issue of damages.  Patray, 931 F. Supp. at 869-70 (quotation omitted).  "The trial judge, sitting without a jury, has considerable latitude in determining the amount of the damages." Id. at 870.  "A court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser-Busch, Inc., 317 F.3d at 1266.

"If, in order to enable the court to enter judgment . . . , it is necessary to take an account or to determine the amount of damages . . . , the court may conduct such hearings or order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2).  "It is a proper exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the prevailing party is lawfully entitled to recover and then give judgment accordingly." Patray, 931 F. Supp. at 869-70 (quotation and citation omitted).

### III. FACTS UPON WHICH LEGAL BASIS FOR ENTRY OF DEFAULT IS EVALUATED AND DAMAGES ARE AWARDED

At the June 6, 2006 hearing, Plaintiff presented evidence to support her request for entry of default judgment and upon which the Court is requested to

award damages. The evidence presented conflicted materially with the facts alleged in the Complaint, and the Court relies on the hearing evidence in evaluating whether there is a sufficient legal basis in the pleadings for entry of default judgment and for determining damages.

Plaintiff was employed as a part-time waitress at Manny's Texas Style Bar-Be-Que restaurant ("Manny's") beginning on or about July 29, 2004. (Tr. at 7.) At the time of her employment she was 17 years old.[2] (Tr. at 6, 25.) The restaurant was located in Union City and is owned by Manny Courett. (Tr. at 7.) Plaintiff's supervisor was Todd Courett ("Courett") who served as restaurant manager and may have been a part-owner. (Tr. at 7-8.) When Plaintiff originally applied to work at Manny's she was not hired. (Tr. at 8.) Her sister, Chastity Glover, later was employed by Manny's. (Id.) When Plaintiff applied a second time she was accompanied by her sister and was successful in obtaining a job. (Id.) Plaintiff worked part-time, mostly in the evenings. (Tr. at 16.) Her compensation was between $100-115 a week. (Tr. at 9.) She was paid in cash. (Id.)

---

[2] Plaintiff did not graduate from high school. She currently is working on her GED. (Tr. at 16-17.)

One night when Plaintiff was not working she received a phone call from her sister. (Tr. at 11.) In that call, Chastity told her of a bet she had made with Courett. (Id.) Plaintiff described how Chastity explained the wager as follows: "he (Courett) had made a bet with her (Chastity) that by the end of the week, that Saturday when we got paid, I would have sex with him. And if he won then Chastity wouldn't get her paycheck, and if she won she would get her paycheck doubled." (Id.) Plaintiff testified that one Sunday morning when she was preparing food at the restaurant, Courett "pulled my ponytail and my head kind of jerked back a little bit, and he said, give me some cut, and jerked my head back." (Tr. at 12.) Plaintiff told him "no." (Id.) Plaintiff understood the term "cut" to mean sex. (Tr. at 11, 13.) On one occasion, Courett said Plaintiff had to go to a storage shed with him. (Tr. at 11.) She did not go because, as stated by the Plaintiff, "that wasn't required in my job to have to go somewhere with him." (Id.) Courett did not state going to the shed meant to have sex. (Tr. at 12.)[3]

---

[3] The specific testimony was:

> Q. So I'm clear and the Court is clear, he asked you to go to the storage shed with him. Did he explicitly state for the purpose of having sex?
>
> A. No, he didn't.

6

Plaintiff observed Courett once come up behind her sister "at the drink machine and touch[] her behind." (Tr. at 14.) The only time Courett touched Plaintiff was when he pulled her ponytail. (Tr. at 22.)

On or about Sunday, August 14, 2005, about two weeks after Plaintiff was hired, she spoke with Mike O'Brien, then the Manny's restaurant manager, on the telephone. (Tr. at 10-11.) He told Plaintiff she was being terminated because "Todd [Courett] informed him to tell [Plaintiff] not to come back in." (Tr. at 10.) Plaintiff told Mr. O'Brien she believed she was being terminated "because [she] never performed sexual favors for Todd because [Todd] had made the gesture that he wanted that from [her]." (Id.) Mr. O'Brien apparently did not respond to this comment. (Tr. at 10-11.)

The next day, Plaintiff and her sister went to the restaurant to get paid. (Tr. at 14-15.) Courett was there and Plaintiff commented to him that she "thought it was unfair that [she] was being fired because . . . [she felt she] was being fired

---

> Q. Did you understand that to be what he meant?
>
> A. My position is, like I said, I was not required to go anywhere with him.

(Id.)

7

because [she] didn't give him sexual favors."  (Tr. at 15.)  She testified that Courett responded that "he can get . . . p-u-s-s-y from anybody, any girl that he wants." (Id.)

Plaintiff did not apply for any jobs for three months after her employment with Manny's was terminated.  (Tr. at 18)  Her current preference is to limit her job search to a night position at a location close to her home so her family can care for her infant child.  (Tr. at 17.)  In the year since her termination from Manny's she has applied for approximately five fast food restaurant and retail positions, but she "never got calls back."  (Tr. at 16-18.)  She has been turned down twice for employment at Taco Bell.  (Tr. at 18.)

Plaintiff claimed that her termination from Manny's made her very angry and that she stayed stressed.  She stated:  "I was so angry that's what I thought about all the time."  (Id.)  She also was stressed because she could not pay her father anything "towards the bills and to buy groceries to put in the house or put gas in my car."[4]  (Id.)

## IV.  DEFAULT JUDGMENT FINDINGS

---

[4] The Court interpreted these remarks to mean that Plaintiff then and maybe even now lives with her parents.

A. <u>Basis for Entry of Default Judgment</u>

In evaluating Plaintiff's testimony, which was the only evidence offered at trial other than a copy of the EEOC's right to sue letter [9], the Court has evaluated the manner and credibility of Plaintiff's testimony. The Court found Plaintiff's testimony disjointed, often unclear and in instances inconsistent with her previous accounts.[5] The Court notes that two incidents which are critical to her claim -- the incident where Courett touched her sister and Courett's statement when Plaintiff and her sister went to the restaurant to be paid -- are not corroborated by her sister, who was a party to these events.[6] Even though uncorroborated, the Court finds Plaintiff's testimony sufficient to support her claim that she was sexually harassed and offensively touched.

Plaintiff's testimony about the emotional effect of the termination is more difficult to evaluate. Her comments about the effect of the way she was treated was plain, detached and devoid of the kind of emotion this Court has observed

---

[5] The Court notes that her counsel commented that the statement of the amount of her wages was greater then she had told him previously by about 25%. (Tr. at 24.)

[6] Her sister has filed a separate action against Manny's based on her termination and that case is pending in this district. <u>Glover v. Manny's Texas Style Bar-Be-Que, Inc.</u>, 1:05-cv-03245-GET (Dec. 21, 2005).

9

when other persons have testified about the emotional impact of discrimination they have experienced. However, combining her description of the hair-pulling incident, that Courett made the "cut" comment described, the offensive remark that Courett made when Plaintiff went to the restaurant to receive her final pay and Plaintiff's expression that her experience at Manny's and with Courett were upsetting, the Court finds she suffered some amount of anger and anguish.

In summary, the Court finds, based on the evidence presented at the hearing on June 6, 2006, that there are adequate legal and factual bases for entry of judgment against Defendants on Plaintiff's claims for Sexual Harassment (Count VIII) and Assault and Battery (Count III). The Court finds there is not an adequate legal or factual basis to support entry of judgment against the Defendants on Plaintiff's claims for Wrongful Retention (Count I), Failure to Maintain a Workplace Free from Unwanted Physical and Sexual Misconduct and Harassment (Count II), Intentional Infliction of Emotional Distress (Count IV), Negligent Training (Count V), Retaliation (Count VI) or Sexual Battery (Count VII).

*Damages*

Plaintiff seeks front pay damages equal to $115 per week from August 14, 2005 to the present. This is not supported by the evidence and is otherwise

unreasonable and unrealistic. Plaintiff at the time of the incidents she alleges was a 17-year-old, limited, part-time employee with no apparent history of employment. There is no evidence any person of her age would have had sustained employment at this restaurant or other similar business. Furthermore, the evidence is that the prospect for employment success are at best limited. She was unable to obtain her part-time position at Manny's on her own and was hired only when she was accompanied by her sister when she made a second application. That she waited for three months to apply for another job after August 14, 2005, shows her lack of initiative or commitment to employment. That four other fast food and retail businesses refused to hire her, one refusing twice, is strong evidence that she does not have the background, experience or skills to be able to sustain employment. The Court determines that, at most, she would have been employed by the Defendant business for six (6) months. This, the Court believes, is a generous assessment. Thus, the Court awards damages under 42 U.S.C. § 2000e-5(g) in the amount of $2,760.00 ($115 x 24 weeks). The Court finds some support for an award of other compensatory damages under 42 U.S.C. § 1981a (2006) and thus finds total discrimination damages should be awarded to Plaintiff in the amount of $4,760.00.

The Court further finds that because this award is substantially based on the one touching Plaintiff described at the hearing involving her pony tail and this is the only battery for which there is any evidence, no additional amount is necessary to be awarded as compensation for the touching alleged.

Although the conduct at issue is offensive, considering all of the circumstances there is an insufficient predicate for an award of punitive damages. Specifically, the Court finds an absence of evidence of malice or reckless indifference required for an award of punitive damages under § 1981a; nor was the evidence sufficient for an award of punitive damages under O.C.G.A. § 51-12-5.1 (2006).

Finally, the Court finds that Plaintiff is entitled, under 42 U.S.C. § 2000e-5(g), -5(k), to an award of attorney's fees and expenses. The Court has reviewed the Affidavit in Support of Request for Attorney's Fees and Expenses [10] submitted by counsel for the Plaintiff. The Court finds the services described in the Affidavit to be reasonable and the hourly rate charged consistent with fees charged by attorneys practicing in this market. The Court finds further that the expenses claimed are reasonable. Accordingly, the Court awards attorneys fees in the amount of $6,875.00 and expenses in the amount of $329.03.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Default Judgment is **GRANTED** and the Clerk of Court is **DIRECTED** to enter default judgment in favor of Plaintiff in the aggregate amount of $11,964.03.

**SO ORDERED** this 14th day of June, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE